UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

RONALD V. JOHNSON,

    Plaintiff,

v.                                                                                06-CV-3293

BRIAN THOMAS and
DR. BEDNARZ,

    Defendants.

### Order

    This case proceeds on the plaintiff's claim that he was administered psychotropic medication against his will. The defendants have filed a summary judgment motion to which the plaintiff has not responded.

    Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e).

    Central District of Illinois Local Rule 7.1(D)(2) provides that ". . .[F]ailure to respond shall be deemed an admission of the motion [for summary judgment]." Additionally, the plaintiff was warned that the defendants' statement of facts would be accepted as true if the plaintiff failed to submit evidence to contradict those statements. Rule 56 Notice, d/e 35; See also *Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003), *quoting Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000)( . . . "[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission. . . ." (citation omitted)).

*Undisputed Facts*

1

These facts are taken largely verbatim from defendants' memorandum, to the extent supported by cites to the record and material to the motion.

1. Plaintiff is a resident of Rushville Treatment and Detention Facility.

2. Plaintiff suffers from a mental illness.

3. Currently, Plaintiff takes risperidone, a psychotropic medication.

4. Plaintiff was taken to the infirmary on November 9, 2006 after he decided not to take his medication.

5. Since Plaintiff would not consent to his medication, proceedings were started in which a court order would be issued to enforce medication.

6. On November 15, 2006, Plaintiff signed a consent form for his medication.

7. According to Dr. Bednarz, Plaintiff's consent form was intended to be in effect for one year, but was mistakenly dated to last only one day, from November 15, 2006 to November 15, 2006.

8. Plaintiff currently receives medication in injection form.

*Analysis*

The Court agrees that there is no evidence that Defendant Thomas was personally involved in or personally responsible for the alleged involuntary administration of medicine to the plaintiff.  "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)(citations omitted).  Thomas cannot be held responsible for others' constitutional violations just because he is in charge. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001)("The doctrine of *respondeat superior* can not be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights.").  Accordingly, summary judgment will be granted to Defendant Thomas.

As to Defendant Bednarz, his affidavit is too vague and conclusory to determine whether material factual disputes exist for trial.  His argument is premised on the plaintiff's signed consent.  However, that signed consent is only for one day, even if it was a scrivener's error. The fact that the plaintiff filed this case arguably allows an inference that the plaintiff disputes whether he understood what he was signing gave consent for a full year.  It may be that Dr. Bednarz did not learn of the mistake until much later, for he would not be liable if he failed to realize the error, given his undisputed averments that he believed the consent was for a year.  But Bednarz does not say when he learned of the mistake, how he learned, and what he did to rectify it (for example, was a corrected consent form signed? When?).  He also does not say what doses of what medicines were ordered, what dosages, and when they were administered, so the court

cannot determine how much or what was allegedly administered to the plaintiff against his will.

There are other unanswered questions as well.  Even if the plaintiff had signed a consent for one year, Bednarz does not say whether the plaintiff was even capable of giving informed consent, and, if so, what is the basis for that conclusion.  Further, the plaintiff alleges that he was locked in the infirmary with no change of clothes until he agreed to sign it.  Bednarz does not adequately set forth the reasons why Plaintiff was locked in the infirmary.  He does explain the foundation for his conclusion that the plaintiff "could become a danger to himself or others" or explain what he means by "displayed disorganized and threatening behavior," which was the averred reason for the plaintiff's placement in the infirmary.  He also does not address the alleged conditions under which the plaintiff was placed in observation, such as the lack of a change of clothing.  He also does not discuss when or what "procedures" were begun to obtain a court order for the medication.  The plaintiff alleges that Bednarz kept telling him that no court order was needed, and kept stalling on obtaining approval until the plaintiff finally gave in and signed the consent.  In short, was the placement of the plaintiff in the infirmary and the conditions therein a means of coercing the plaintiff's consent or was it based on Bednarz' professional judgment of what was medically/psychiatrically appropriate?[1]

There are too many holes in the record to support summary judgment for Defendant Bednarz, even without a response from the plaintiff.  Involuntary administration of psychotropic medicine is serious business and deserves a serious look.  Summary judgment may well be appropriate, but the current record is not developed enough to support it.

IT IS THEREFORE ORDERED:

1) Defendants' motion for summary judgment is granted in part and denied in part (d/e 22).  Summary judgment is granted to Defendant Thomas, who is terminated from this action.  Summary judgment is denied to Defendant Bednarz.

2) By June 30, 2008, Defendant Bednarz is directed to file a supplemental motion for summary judgment addressing the issues in this order.

3) A final pretrial conference is scheduled for November 6, 2008, at 1:30 p.m. by telephone conference.  The parties are further directed to submit an agreed proposed final pretrial order by October 29, 2008.  The defendants are reminded that they bear the responsibility for preparing the final pretrial order pursuant to Local Rule 16.3-4(H).  *See Appendix 2* to Local Rules for a sample form.  www.ilcd.uscourts.gov/local rules

---

[1] The court also notes that Bednarz does not explain the basis for his conclusion that the plaintiff has a "mental illness" or what that mental illness is.  He does not set forth his qualifications and training, whether he personally examined the plaintiff, or whether his conclusions are based on a review of the plaintiff's records (which are also not attached).

4)  A jury trial is scheduled for November 10, 2008, at 9:00 a.m. at the U.S. Courthouse, 201 S. Vine St., Urbana, IL.

Enter this 30th day of May, 2008.

                                                     **s\Harold A. Baker**

                                        HAROLD A. BAKER
                                        UNITED STATES DISTRICT JUDGE